## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LAMONT HEARD,

      *Plaintiff,*

                            CASE NO. 2:21-cv-10237

*v.*

                            DISTRICT JUDGE NANCY G. EDMUNDS

VARNICE STRANGE,            MAGISTRATE JUDGE PATRICIA T. MORRIS
JEFFREY OOSTERHOFF,
ADAM DOUGLAS, and
CHRIATIAN ALCORN,

      *Defendants.*[1]

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 44)

### I.    RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants' motion for summary judgement (ECF No. 44).

### II.    REPORT

#### A.    Introduction

42 U.S.C. "§ 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and…federal courts must borrow the statute of

---

[1] The undersigned recognizes that the docket misspells "Yarnice Strange" as "Varnice Strange" and "Christian Alcorn as "Chriatian Alcorn." (*See* ECF No. 31, PageID.141.) Defendants Schooley, Shannon, and Griffey were dismissed from this action on August 16, 2021.

limitations governing personal injury actions from the state where the § 1983 claim was brought." *Cooey v. Strickland*, 479 F.3d 412, 707, 714 (6th Cir. 2007). "When § 1983 claims arise in Michigan, as Plaintiffs' claims do in this instance, 'the appropriate statute of limitations…is [Michigan's] three-year limitations period for personal injury claims.'" *Forrester v. Clarenceville School District*, 537 F.Supp.3d 944, 949 (E.D. Mich. 2021)(internal citations omitted). "Because § 1983 and Title IX borrow their statutes of limitation from state law, state tolling rules apply to the federal claims." *Id*. at 954.

This prisoner civil rights action concerns an injury that is over four years old and therefore falls outside the general statute of limitations.  But Lamont Heard brought many of his claims in a previous action before the Court dismissed them without prejudice due to Heard's failure to first exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  If the statute of limitations had been tolled between the filing of those claims and their dismissal, then this case would be timely filed.

Accordingly, the Court must decide two issues.  First, the Court must determine whether Michigan law tolls the statute of limitations while an unexhausted claim is pending before a court.  And if it does, the Court must then determine whether that tolling rule is consistent with the policies underlying the PLRA.

**B.    Background**

**1.    Heard's Prison Transfers**

Heard is an inmate in the custody of the Michigan Department of Corrections ("MDOC").  (ECF No. 31, PageID.203–05).  In 2016, Heard and two other inmates, Richard Baldwin and Jerome Smith, filed a lawsuit against a group of Michigan officials.  (ECF No. 23, PageID.116).  All three men lived in the same housing unit and would regularly meet with each other to discuss their case.  (*Id.* at PageID.92, 116).  Heard and his co-plaintiffs were Muslims, and during these meetings they would occasionally discuss Islam.  (ECF No. 23, PageID.92, 115).  Heard and his co-plaintiffs conducted these meetings in view of Jeffrey Oosterhoff, a prison counselor.  (*Id.* at PageID.115–16).  Although Oosterhoff could see the inmates, he could not hear their discussions and did not personally know what the men were discussing; however, Heard claims that Oosterhoff knew they were involved in litigation because he would approve their legal mail.  (*Id.*)

During this time, Heard claims that Christian Alcorn, residential unit officer, regularly harassed him for practicing Islam.  (*Id.* at PageID.113–14).  Indeed, while Heard lived in Alcorn's housing unit, Alcorn would "shake . . . down" Heard's cell and tell other prisoners that Heard was a Muslim.  (*Id.*)  Eventually, Alcorn reported to Oosterhoff that he saw Heard recruiting other inmates into either the Nation of Islam or the Moorish Science Temple of America, which Alcorn described as

"gangs." (*Id.* at PageID.104–05). Heard denies that he proselytized either religion and states that Alcorn and Oosterhoff "fabricat[ed]" this allegation. (*See id.* at PageID.93).

Heard believes that Oosterhoff was concerned with both Heard's litigation and Alcorn's reports that Heard had been recruiting other prisoners to the Nation of Islam. For these reasons, Heard argues that Oosterhoff contacted Yarnice Strange, the residential unit supervisor of a separate housing unit, Burns-A, hoping to transfer Heard from his former unit, Auburn-A. (*Id.* at PageID.116). Oosterhoff and Strange agreed to the transfer, and with their supervisor's approval, Heard moved from Auburn to Burns on January 10, 2017. (ECF No. 31, PageID.175; ECF No. 44-3, PageID.355).

Heard describes Burns as a "gang unit" where the prison housed known gang members. (ECF No. 23, PageID.96). Heard also explains that because he lived in a separate unit from his co-plaintiffs, he could no longer meet with his co-plaintiffs to discuss their case or "conduct legal research," and, following his transfer, Heard states that he "lost [thirty] days of being able to access the law library." (*Id.* at PageID.94, 99, 117). By contrast, Heard describes Auburn as an "honor unit" which ostensibly has more privileges than other units. (ECF No. 11, PageID.64); *see* James V. O'Connor, *The Privileged: Inmates Who Earn Honor Rooms*, N.Y. Times, Oct. 15, 2000.

After his transfer, Heard met separately with Strange and Adam Douglas, an inspector at the prison. (ECF No. 23, PageID.94–95, 108–18). At both meetings, Heard states that Strange and Douglas warned him that if he did not stop pursuing his lawsuit and discussing Islam with other prisoners, then they would transfer him to a different prison. (*Id.* at PageID.113, 118). According to Heard, Douglas also claimed that Oosterhoff told him that he recommended Heard's transfer to stop Heard's litigation and religious practices. (*Id.* at PageID.112, 114). Heard states that he did not stop either activity and prison officials eventually transferred him to a different prison. (*Id.* at PageID.94–95; *see* ECF No. 31, PageID.205).

## 2. Procedural History

After Heard was transferred to a different prison, he filed an earlier lawsuit in December 2017 against most of the present Defendants and several other prison officials, alleging that the officials transferred him in retaliation for his litigation. (*Heard v. Strange*, No. 2:17-cv-13904, ECF No. 1). His complaint did not mention the transfer to Burns, nor did it allege that officials retaliated against him for practicing his religion. (*Id.*) On August 31, 2018, Heard moved to amend his complaint to include his transfer to Burns, but again, this complaint did not allege religious retaliation, nor did it list Alcorn as a defendant. (*Id.* at ECF No. 15). The Court granted Heard leave to amend his complaint on August 31, 2018. (*Id.* at ECF No. 27).

The Court ultimately dismissed all of Heard's claims related to the intra-facility transfer on July 31, 2019, finding that Heard failed to exhaust his administrative remedies before amending his complaint. (*Id.* at ECF No. 72). Heard later filed his original complaint in this action on January 19, 2021, addressing both his intra-facility transfer to Burns and his inter-facility prison transfer. (*Heard v. Strange*, No. 2:21-cv-10237, ECF No. 1). This Court dismissed Heard's entire complaint, reasoning that it was duplicative of his other case, but later allowed him to amend his complaint to bring retaliation claims relating to his intra-facility transfer. (ECF Nos. 6, 9.) Plaintiff amended his complaint accordingly and eventually moved the Court to enter summary judgment on his behalf. (ECF Nos. 11, 23.) Both the original complaint and the amended complaint allege that Defendants' retaliated against Heard for practicing his religion, but only the amended complaint lists Alcorn as a defendant. (ECF No. 1, PageID.6–7, ¶¶ 40–50; ECF No. 11, PageID.67–68, ¶¶ 57–63). Defendants now move for summary judgment, arguing in part that Heard failed to file this action within the statute of limitations. (ECF No. 44, PageID.321–23).

### C. Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light

most favorable to the non-moving party. *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp.

2d 489, 492 (D. N.J. 2010).  In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility.  *Id.* at 493.  And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'"  *Veloz v. New York*, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### D.    Analysis

Defendants argue that the Court must dismiss all of Heard's claims because he filed his complaint outside of the statute of limitations.  Statutes of limitations require that a "cause of action . . . be brought within a certain period of time."  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998).  For plaintiffs, like Heard, who file complaints under § 1983 in Michigan, the statute of limitations is three years.  *Garza v. Lansting School Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020).  The three-year statute of limitations begins to run "when the plaintiff knows or has reason to know [of] the act providing the basis of his or her injury," which, here, would be January 10, 2017, the date on which Heard was transferred to Burns.  *Collyer v. Darling*, 98

F.3d 211, 220 (6th Cir. 1996*); (ECF No. 44-3, PageID.355); *see also Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007).

On its face, Plaintiff's complaint appears to be barred by the statute of limitations. Although MDOC officials transferred Heard to Burns on January 10, 2017, Heard did not file his original complaint in this matter until over four years later on January 19, 2021.[2] (ECF No. 1).

Even so, Heard argues that he filed his complaint in a timely manner because the statute of limitations was tolled for well over a year while he attempted to amend a complaint in a separate matter to include the claims he now asserts here. Federal courts borrow the tolling rules from the state in which they sit, unless doing so would be "inconsistent with" federal law. *Carmichael v. Correctional Med. Servs.*, No. 12-cv-13594, 2016 WL 28985, at *2 (E.D. Mich. Jan. 4, 2016) (quoting *Bd. of Regents of U. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980). Under Michigan law, the plaintiff bears the burden of proving that he or she is entitled to tolling. *Warren Consol. Schools v. W.R. Grace & Co.*, 205 Mich. App. 580, 583–84 (1994). Michigan also does not recognize "equitable" tolling: a plaintiff's right to tolling must be provided—if at all—by statute. *Weathers v. Holland Police Dept.*, No. 1:13CV1349, 2015 WL 357058, at *5 (W.D. Mich. Jan. 27, 2015).

---

[2] Heard did not bring any claims against Alcorn until he filed his amended complaint on June 21, 2021. (*Compare* ECF No. 1, *with* ECF No. 11, PageID.60). Both complaints addressed the intra-facility transfer.

One such statute might apply to at least some of Heard's claims.   Under Mich. Comp. L. § 600.5856(a)–(b), "[t]he statutes of limitations or repose are tolled . . . [a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules," or on the date the court otherwise acquires jurisdiction over the defendant.   Thus, the "limitations period" is tolled while an action is "pending" if that action is "later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. June 2, 2003) (citing *Yeo v. State Farm Fire & Cas. Ins. Co.*, 242 Mich. App. 483 (2000)).

Here, Heard filed an action in December 2017, alleging that a group of officials transferred him to a different facility in retaliation for litigating a civil lawsuit with other prisoners.   (*Heard v. Strange*, No. 2:17-cv-13904, ECF No. 1). On March 2, 2018, Heard moved to amend his complaint to further allege a second retaliatory action—an intra-facility transfer to different housing unit that occurred shortly before his inter-facility transfer.   (*Id.* at ECF No. 15).   The Court granted Heard leave to amend his complaint on August 31, 2018, but the Court ultimately dismissed Heard's intra-facility transfer claims without prejudice for failure to exhaust his administrative remedies on July 31, 2019.   (*Id.* at ECF Nos. 27, 72).

Over one year and four months elapsed between the date Heard moved to amend his complaint and the date the Court dismissed his complaint without

prejudice.  So if the Court tolls the statute of limitations under Mich. Comp. L. § 600.5856(a) for this entire period, then any claims Heard previously brought in his March 2018 amended complaint would have been filed in this matter before the statute of limitations expired.  *See Steele v. Winfield*, ___ N.W.2d___, 2022 WL 4391139, at *4 (Mich. Ct. App. Sept. 22, 2022) (holding that tolling under § 600.5856 begins on the date a plaintiff moves to amend the complaint, not on the date the Court grants leave to amend).

But not every claim Heard brings in this action was addressed in his March 2018 amended complaint.  Specifically, the complaint did not bring any religious retaliation claims, nor did it name Alcorn as a defendant.   (*Heard v. Strange*, No. 2:17-cv-13904, ECF No. 15).   In fact, the Court noted that Heard's amended complaint was "devoid of any allegation that" he practiced "any religion, that he was threatened for fulfilling his religious obligations, or that he was organizing with members of his faith." (*See id.* at ECF No. 27, PageID.391).[3]   So to the extent § 600.5856 might apply at all, it can only save Heard's claims against Strange, Oosterhoff, and Douglas—and only to the extent that Heard alleges retaliation based on his litigation activities.  (*See id.* at ECF No. 27, PageID.391 ("The amended

---

[3] Heard raised these issues for the first time in his objections to my Report and Recommendation on his motion to amend. (*Compare id.* at ECF No. 15, *with id.* at ECF No. 23, PageID.323–24).

complaint [exclusively] alleges that Defendants transferred Plaintiff because of his litigation activities . . . .”)).

However, there is reason to doubt whether Mich. Comp. L. § 600.5856(a) can even apply here. At least one court in this circuit has held that § 600.5856(a) does not toll the statute of limitations when a prisoner files a lawsuit without first exhausting his or her administrative remedies. *Crump v. Darling*, No. 1:06-cv-20, 2007 WL 851750, at *13–14 (W.D. Mich. Mar. 21, 2007). In *Crump*, the Western District of Michigan had dismissed a prisoner’s prior § 1983 action against a corrections officer because the prisoner had failed to exhaust his administrative remedies as to all of his claims.[4] 2007 WL 851750, at *3. By the time the Sixth Circuit had affirmed the district court’s decision, over three years had passed since the prisoner filed his complaint, and about four years and four months had passed since the three year statute of limitations began to run. *Id.* at *3, *12.

The prisoner argued that his previous lawsuit tolled the statute of limitations under Mich. Comp. L. § 600.5856, and his current lawsuit was therefore timely. The court rejected this argument for two reasons. *Id.* at *12. First, the court cited a line of Michigan Supreme Court cases which it believed to hold that § 600.5856(a) does

---

[4] That dismissal predated the Supreme Court’s decision in *Jones v. Bock*, 549 U.S. 199, 219–24 (2007), which held that courts may not dismiss a prisoner’s entire complaint because some, but not all, of the claims had been exhausted—only the unexhausted claims may be dismissed.

not toll the statute of limitations where a case is dismissed without prejudice for a plaintiff's failure to comply with a "mandatory" prerequisite to filing a complaint. *Id.* at *13. Because the Prison Litigation Reform Act ("PLRA") mandates exhaustion as a prerequisite to bringing suit, the court concluded that § 600.5856(a) does not toll unexhausted claims subject to the PLRA. *Id.* And second, the court reasoned that even if § 600.5856 could toll the statute of limitations, the court could not apply the statute because it was inconsistent with federal law, as it would encourage inmates to file unexhausted claims and flood the courts with "prolix complaints" destined to be dismissed for failure to exhaust. *Id.*[5]

*Crump*'s conclusion that § 600.5856 would not toll the statute of limitations when a prisoner brings an unexhausted claim against prison officials is mistaken. The court's rationale rested on two Michigan cases: *Scarsella v. Pollak*, 461 Mich. 547 (Mich. 2000), and *Burton v. Reed City Hosp. Corp.*, 471 Mich. 745 (Mich. 2005). In *Scarsella*, the Michigan Supreme Court analyzed a statute that prohibited plaintiffs from filing medical malpractice suits without an "affidavit of merit" from a "qualified health professional," stating that the "plaintiff has a valid malpractice

---

[5] *But see Bell v. Washington*, No. 21-10399, 2022 WL 830589, at *3 (E.D. Mich. Mar. 17, 2022); *McDaniel v. Bechard*, No. 18-CV-12843, 2019 WL 1372170, at *3 (E.D. Mich. Feb. 20, 2019), *report and recommendation adopted*, No. 18-12843, 2019 WL 1354162 (E.D. Mich. Mar. 26, 2019) (applying Mich. Comp. L. § 600.5856 without discussing its consistency with federal law); *Gashi v. County of Westchester*, No. 02 Civ. 6934, 2005 WL 195517, at *17 (S.D.N.Y. Jan. 27, 2005).

claim." 461 Mich. at 548 (quoting *Scarsella v. Pollak*, 232 Mich. App. 61, 62 (1998)); *see also* Mich. Comp. L. § 600.2912d(1)–(2). At issue in *Burton* was another medical malpractice prerequisite which provides that "a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." 471 Mich. at 427–28 (internal quotation marks omitted) (quoting Mich. Comp. L. § 600.2912b(1)).

In both *Scarsella* and *Burton*, the Court reasoned that these statutes created jurisdictional prerequisites to medical malpractice actions. Without an affidavit of merit, or an expired waiting period, the courts had no authority to decide a medical malpractice action. *See Burton*, 471 Mich. at 754; *Scarsella*, 461 Mich. at 713; *see also Johnson v. Abrams*, No. 287906, 2011 WL 668356 (Mich. Ct. App. Feb. 24, 2011) (describing § 600.2912b(1) as a jurisdictional requirement); *Simon v. Widrig*, No. 277070, 2008 WL 2745991, at *3–4 (Mich. Ct. App. July 15, 2008) (explaining that the affidavit of merit requirement cannot be waived).

By their own terms, the statutes govern when an action may "commence"— they do not simply add an element to a plaintiff's claims. *Tyra v. Organ Procurement Agency*, 498 Mich. 68, 94 (2015). Because a case could not be "commence[d]" without the plaintiff complying with either statute, the original,

14

deficient complaint in these cases was a "nullity". *See Scarsella*, 461 Mich. at 713. In effect, no complaint had been "filed" and the court never otherwise acquired "jurisdiction over the defendant." *See Progress Mich. v. Attorney General*, 506 Mich. 74, 100–01, 105 (2020) (McCormack, C.J., concurring); *see also id.* at 106–07 (Markman, J., concurring); Mich. Comp. L. § 600.5856. Therefore, there was never an action that could have tolled the statute of limitations under § 600.5856 to begin with.

But unlike affidavit of merit and waiting period requirements, exhaustion under the PLRA is not a jurisdictional prerequisite. Under 42 U.S.C. § 1997e(a), prisoners "shall" not bring any action "with respect to prison conditions" without first exhausting all of their "available" administrative remedies. At first blush, the statute appears to create a "mandatory" prerequisite much like those at issue in *Burton* and *Scarsella*. However, unlike Michigan's affidavit of merit and waiting period requirements, exhaustion under the PLRA is not required for an action to "commence." Indeed, a prisoner's failure to exhaust his or her administrative remedies is an affirmative defense which must be raised by the defendants—a prisoner need neither plead nor prove exhaustion. *Jones*, 549 U.S. at 216. Because an action can potentially proceed even where a prisoner does not exhaust his or her administrative remedies, the prisoner's failure to exhaust does not render the complaint a "nullity." *Cf. Scarsella*, 461 Mich. at 713. Accordingly, when a

prisoner brings an unexhausted claim against an official, that claim can toll the statute of limitations under § 600.5856.

Even so, the Court cannot apply § 600.5856 here because the statute is inconsistent with the PLRA.  As mentioned above, federal courts must generally borrow a state's tolling rules in § 1983 actions.  *Perreault v. Hostletler*, 884 F.2d 267, 270 (6th Cir. 1989).  However, Courts must "disregard" state rules that are "inconsistent with" federal law.  *Tomanio*, 446 U.S. 478, 485 (citing 42 U.S.C. § 1988); *see also Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 353, 537 (6th Cir. 2010).  To determine whether a tolling rule is "consistent" with federal law, courts must identify and compare the policies underlying the state and federal laws at issue.  *Tomanio*, 446 U.S. at 487.

Congress enacted the PLRA to curtail what it perceived as an explosion of meritless prisoner lawsuits clogging the courts and wasting judicial resources.  *See Jones*, 549 U.S. at 203–04.  As a result, meritorious prisoner cases became buried in a pile of meritless claims, requiring courts to search for "needles" in "haystacks."  *Id.* at 224.  To address this problem, the Act established several rules designed to both "reduce the quantity and improve the quality of inmate suits," while simultaneously "eliminat[ing] unwarranted federal-court interference with the administration of prisons."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  One of these rules requires prisoners to fully exhaust

16

their "available" administrative remedies before filing an action concerning the "conditions" of their confinement.  42 U.S.C. § 1997e(a).

Exhaustion advances the PLRA's overall goal of filtering prisoner litigation in three ways.  First, it affords "corrections officials time and opportunity to address complaints internally . . . thereby [potentially] obviating the need for litigation." *Porter*, 534 U.S. at 525.  Second, exhaustion allows prisons to "filter out some frivolous claims" through their "internal review" processes.  *Id.* (internal quotation marks omitted) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)).  And third, exhaustion builds "an administrative record that clarifies the contours" of controversies that are "ultimately brought to court."  *Id.*  In essence, exhaustion allows prison officials an opportunity to resolve disputes before that burden must fall on the courts.  *See id.*

As the *Crump* Court noted, § 600.5856 eliminates much of the risk facing prisoners who choose to file complaints without first exhausting their administrative remedies.  Under the statute, a prisoner could potentially skip the administrative review process and proceed directly to federal court.  2007 WL 851750, at *14. When the prisoner's claims are eventually dismissed without prejudice for failure to exhaust, the statute of limitations would be tolled, and the prisoner could once again proceed to federal court without exhausting his or her claims.  *Id.*; *see Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006).  The *Crump* Court

feared that this process could continue indefinitely and strain judicial resources—defeating a central goal of the PLRA.  2007 WL 851750, at *14.  Indeed, each time a prisoner files an unexhausted claim, the Court must, at a minimum, screen the complaint, serve the defendants on the prisoner's behalf, and then decide an inevitable motion for summary judgment based on the prisoner's failure to exhaust. *Id.*; *see also* 28 U.S.C. §§ 1915(d), 1915A(a).  Such a practice might also pressure officials to forfeit their affirmative defense and address the prisoner's unexhausted claims on the merits to stop the "s*eriatim*" lawsuits.  *Crump*, 2007 WL 851750, at *14; *see Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit.").

Statutes of limitations provide a powerful incentive for prisoners to exhaust their administrative remedies—and to do so diligently.  A prisoner who flouts the administrative review process—whether purposely (as was true in *Crump*) or negligently—does so at the risk that his or her claims may become time-barred.  *See* 2007 WL 851750, at *12.  Section 600.5856, however, allows prisoners to proceed directly to federal court with the worst possible consequence for ignoring § 1997e(a) being dismissal without prejudice and an opportunity to attempt another lawsuit.  *See Boyd*, 380 F.3d at 994; *Crump*, 2007 WL 851750, at *14 ("Congress assuredly did not intend that prisoners be rewarded with the benefit of tolling and being allowed

18

to pursue otherwise stale claims for deliberately filing *seriatim* lawsuits flouting the administrative exhaustion requirement.").

Of course, tolling is not, in itself, an incentive for prisoners to pursue unexhausted claims, and there may be reasons to question the extent to which prisoners would abuse § 600.5856.  But the central goal of the PLRA is to alleviate the burden prisoner litigation places on federal courts, and § 600.5856 enables prisoners to encumber courts by repeatedly ignoring the PLRA's mandatory exhaustion requirement.  *Jones*, 549 U.S. at 203–04.; *Crump*, 2007 WL 851750, at *14.  Creating this opportunity for abuse weakens the mandatory nature of exhaustion, increases the strain on courts, and makes it less likely that prisoners will exhaust their administrative remedies before filing a complaint.  Accordingly, I suggest that Mich. Comp. L. § 600.5856 is inconsistent with the PLRA and that the Court cannot toll Heard's statute of limitations for the time during which his previous complaint had been filed.  This action, therefore, is barred by the statute of limitations and should be dismissed with prejudice.

### E. Conclusion

For these reasons, **I RECOMMEND** that this Court **GRANT** Defendants' motion for summary judgement (ECF No. 44).

## III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address

each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 1, 2023                    s/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge